UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 1:21-cr-441 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | |
| | ) | |
| CHRISTOPHER PROWELL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**OPINION AND ORDER**

Christopher Prowell pled guilty to (1) two counts of bank robbery in violation of 18 U.S.C. §§ 2113(a) and (f) (Counts One and Five); (2) one count of bank robbery in violation of 18 U.S.C. §§ 2113(a), (d), & (f) (Count Six); and (3) three counts of interference with commerce by means of a robbery in violation of 18 U.S.C. § 1951(a) (Counts Two, Three, and Four). On December 20, 2021, the Court sentenced Mr. Prowell to 108 months in prison on Counts One through Six, to run concurrently, but he now also has a 33-month revocation sentence to run consecutive to that. This 108-month sentence was based on a total offense level of 27 and criminal history category of IV—yielding an advisory guideline range of 100 to 125 months—the parties' plea agreement, and the factors set forth in 18 U.S.C. § 3553(a).

Pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 821 to the United States Sentencing Guidelines, Mr. Prowell filed a motion for a sentence reduction. (ECF No. 28.) The United States opposes the motion. (ECF No. 29, PageID #151.) On October 10, 2024, Mr. Prowell filed an update to his motion. (ECF No. 30.) And the

Court heard arguments from counsel at a hearing on October 15, 2024 at which Mr. Prowell also addressed the Court.

The Court employs a two-step approach in deciding whether to reduce a sentence based on a retroactive amendment to the Sentencing Guidelines. First, the Court must consider the scope of the reduction authorized by the amendment; second, the Court must consider whether such a reduction is warranted based on the factors set forth in 18 U.S.C. § 3553(a). *Dillon v. United States*, 560 U.S. 817, 827 (2010). In evaluating these factors, the Court may exercise its discretion to consider evidence concerning the defendant's post-sentencing rehabilitation efforts or the defendant's post-sentencing prison infractions. *Concepcion v. United States*, 597 U.S. 481, 492– 95 (2022); *United States v. Goodwin*, 87 F.4th 321, 326 (6th Cir. 2023) (citation omitted) ("[A] defendant who has been a model prisoner might warrant a sentence reduction more than one who has been a serial rule violator."). But "the recalculated guidelines range should still anchor the court's discretionary balancing." *United States v. Caver*, 101 F.4th 422, 427 (6th Cir. 2024) (citing *Goodwin*, 87 F.4th at 326– 27.).

Mr. Prowell seeks a reduction in his sentence because, under the Sentencing Guidelines as amended, he would no longer receive two status points within his criminal history calculation. (ECF No. 28, PageID #148–49.) The United States concedes that Mr. Prowell would in fact receive a lower criminal history calculation under Amendment 821. (ECF No. 29, PageID #153.)

2

Effective November 1, 2023, the Amendment has retroactive effect. *See* U.S.S.G. § 1B1.10(d) & (e)(2). Accordingly, application of the Amendment lowers Mr. Prowell's criminal history points from 8 to 6, changing his criminal history category from IV to III. As a result, a lower guideline range applies in Mr. Prowell's case: under the Amendment, his Guideline range drops from 100–125 months to 87–108 months.

Mr. Prowell asks this Court to lower his sentence from 108 months to 96 months, arguing that a new sentence of 96 months accounts for the Sentencing Guidelines as amended and, specifically, that "this mid-range sentence based upon a similar range sentence imposed at the time of sentencing" supports such a reduction. (ECF No. 28, PageID #150.) Mr. Prowell concludes his motion by stating that "the 18 U.S.C. § 3553(a) factors as reflected in the Presentence Report, the sentencing memoranda filed on Mr. Prowell's behalf, and other factors presented at the time of his original December, 2021 sentencing hearing" support his requested sentence reduction. (*Id.*) However, he does not argue how the report, the memoranda, or the arguments at the time of his initial sentencing each specifically support the reduction he seeks. (*See id.*)

While the United States concedes that Mr. Prowell is eligible for a reduction under the Amendment, it contends that the factors set forth in Section 3553(a) do not support reducing Mr. Prowell's sentence. (ECF No. 29, PageID #153, #155–57.) Specifically, the United States argues that (1) the violent nature, circumstances, and seriousness of Mr. Prowell's offense, (2) Mr. Prowell's personal history and

3

characteristics, and (3) the need to afford adequate deterrence and protect the community, all weigh against reducing his sentence. (*Id.*)

In evaluating a sentence reduction, the Court considers the following factors:

*Nature and Circumstance of the Offense.* Pursuant to 18 U.S.C. § 3553(a)(1), the sentence must "consider . . . the nature and circumstances of the offense." In just over a month, Mr. Prowell committed six robberies. (ECF No. 20, PageID #85.) He robbed three banks and three convenience stores. (*Id.*) In two instances, he threatened tellers with a knife. (*Id.*) And in the last one, he threatened to shoot the tellers and placed an object behind their backs. (*Id.*) These are serious crimes in which the victims reported being traumatized. (*Id.*, PageID #86.) They demand a serious sentence.

*History and Characteristics of Defendant.* Pursuant to 18 U.S.C. § 3553(a)(1), the sentence must "consider . . . the history and characteristics of the defendant." Mr. Prowell is now 65 years old. Before this conviction, he worked as a painter and operated his own paint business. (ECF No. 20, PageID #94.) At the time he committed the six burglaries, Mr. Prowell was married—but lived with his girlfriend at a hotel—and had 3 adult children. (ECF No. 20, PageID #93; ECF No. 22-2, PageID #117.)

Before committing the six robberies in this case, Mr. Prowell had a history of theft-related convictions. He was convicted of theft in 1983, sentenced to 15 years in prison for robbery in 1984—paroled in 1988—and then sentenced to two years in prison for attempted burglary in 1994—and his 1988 parole was also revoked in 1994,

4

with his sentence not being discharged until 1998. (ECF No. 20, PageID #90.) Most recently, before the sentence in this case, in 1999—less than a year after his previous sentence was discharged—Mr. Prowell was again convicted of robbery and sentenced to 22 years in prison, from which he was released from custody in March of 2019— only two years before committing the six burglaries in this case. (*Id.*) This history shows that Mr. Prowell is unlikely to be deterred from committing similar crimes. Although the Court may consider post-sentencing rehabilitation efforts by a defendant in weighing Section 3553(a) factors, that information is mixed. (*See* ECF No. 30-1, PageID #165–69.) While Mr. Prowell has completed various programs, he was also disciplined.

A psychological evaluation from the time of sentencing sheds additional light on Mr. Prowell's background. "Mr. Prowell shared that he was sexually abused by an adult female neighbor and separately by an older female cousin when he was seven or eight years old." (ECF No. 22-2, PageID #118.) Mr. Prowell's Full Scale IQ is 71, which is in the bottom 3% of scores. (*Id.*, PageID #119.) And in Mr. Prowell's initial sentencing memorandum, defense counsel argued that his IQ and portions of the psychological evaluation showed that Mr. Prowell is unlikely to be able to limit his impulses, that he has a more gullible personality, and that he committed the robberies to please others. (ECF No. 22, PageID #108.) Counsel argued that, based on this information, deterrence or rehabilitation efforts through prison will not work for Mr. Prowell and that Mr. Prowell instead needs to be surrounded by positive influences in order for him to make better decisions. (*Id.*, PageID #108–09.)

5

Before his conviction in this case, Mr. Prowell never received mental-health treatment, and his psychological evaluation indicated that he would benefit from behavioral treatment. (ECF No. 22-2, PageID #117, 121.) Based on the 2021 evaluation, receiving "[t]reatment that assists Mr. Prowell with replacing costly, immediate-focused behaviors for more adaptive behaviors will be important to mitigate Mr. Prowell's recidivism." (ECF No. 22-2, PageID #121.) However, Mr. Prowell has not submitted evidence to the Court that shows any participation in any form of mental-health or behavioral treatment since sentencing. (*See* ECF No. 28.) In fairness to him, notwithstanding the Court's recommendations at sentencing (ECF No. 24, PageID #129), the Bureau of Prisons appears, somehow, to have classified Mr. Prowell as not needing mental health services (ECF No. 30-1, PageID #164).

*Need for Sentence Imposed.* Pursuant to 18 U.S.C. § 3553(a)(2), the sentence must "consider . . . the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law," to provide just punishment, to provide adequate deterrence, to protect the public from future crimes of the defendant, and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

First, the six burglaries in this case constitute serious offenses that resulted in harm to institutions and their employees, as well as the communities in which the offenses occurred. (*See* ECF No. 20, PageID #85–86.) Although a prison sentence may not deter Mr. Prowell himself from committing future crimes, it may deter others

6

from committing similar serious offenses. Second, a prison sentence may rehabilitate Mr. Prowell if he receives the mental-health or behavioral treatment he needs.

*Kinds of Sentences Available and Sentencing Range.* Pursuant to 18 U.S.C. § 3553(a)(3–5), the sentence must "consider . . . the kinds of sentences available[,] the kinds of sentence and the sentencing range established for" the offense committed "as set forth in the guidelines . . . issued by the Sentencing Commission," as well as "any pertinent policy statement . . . by the Sentencing Commission." Based on the Amendment, Mr. Prowell's guideline range changed from 100–125 months to 87–108 months. In the parties' plea agreement, both parties stipulated that each would not advocate for a sentence outside the guideline range—which at the time was 100–125 months based on Mr. Prowell's criminal history, though his criminal history itself was not specified in the plea agreement. (*See* ECF No. 20, PageID #84, 92.)

*Need to Avoid Unwarranted Sentence Disparities.* Pursuant to 18 U.S.C. § 3553(a)(6), the sentence must "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." The Sentencing Commission maintains a database that compiles sentencing data to help with this sentencing factor. At the time of sentencing, the database revealed:

> During the last five fiscal years (FY2016–2020), there were 47 offenders whose primary guideline was § 2B3.1, with a Final Offense Level of 27 and a Criminal History Category of IV, after excluding offenders who received a § 5K1.1 substantial assistance departure. For the 47 offenders (100%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 145 month(s) and the median length of imprisonment imposed was 120 month(s).

7

(*See* ECF No. 20, PageID #100.) Today, with Mr. Prowell's adjusted Guideline Range, the same data shows:

> During the last five fiscal years (FY2019–2023), there were 46 defendants whose primary guideline was § 2B3.1, with a Final Offense Level of 27 and a Criminal History Category of III, after excluding defendants who received a § 5K1.1 substantial assistance departure. For the 46 defendants (100%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 81 month(s) and the median length of imprisonment imposed was 78 month(s). For all 46 defendants . . . , the average sentence imposed was 81 month(s) and the median was 78 month(s).

\* \* \*

In evaluating the Section 3553(a) factors, the Court recognizes that the Amendment lowers Mr. Prowell's sentencing guideline range to 87–108 months. Additionally, the sentencing commission's database shows that under his new guideline range, the mean sentence imposed in the last five years is 81 months and the median is 78 months. Further, Mr. Prowell's low IQ demonstrates that a high sentence will likely fail to deter Mr. Prowell from committing similar crimes. Taken together, these factors—particularly the data regarding sentencing disparities—demonstrate that Mr. Prowell should receive a modest reduction in his sentence.

Mr. Prowell seeks a reduction in his sentence to 96 months (ECF No. 28, PageID #150)—still within the guideline range. Multiple Section 3553(a) factors weigh against granting Mr. Prowell a greater sentence reduction. The Court is required to consider whether the potential reduced sentence would reflect the seriousness of these offenses and promote respect for the law. Notably, Mr. Prowell's

8

significant criminal history of committing violent robberies and burglaries indicates that he has a high risk of recidivism; this risk threatens the public's safety. Additionally, Mr. Prowell committed six robberies in just over a month that caused harm to the involved individuals, institutions, and communities.

In considering the record as a whole, and after considering the proper balance of all the factors set forth in Section 3553(a), the Court finds a sentence reduction warranted under Amendment 821, **GRANTS** Mr. Prowell's motion to reduce sentence, and **ORDERS** his sentence be reduced from 108 months to 96 months. Additionally, at sentencing the Court recommended that the Bureau of Prisons give Mr. Prowell credit for all time served in connection with this offense. (ECF No. 24, PageID #126.) To effect that recommendation, the Court adjusts that sentence pursuant to U.S.S.G. § 5G1.3(b) to a total of 89 months to account for time served in custody for which Mr. Prowell has not received credit toward his sentence. This sentence shall run consecutive to the 33-month revocation sentence. To facilitate Mr. Prowell's transition from prison to the community and to the protect the public, the Court adds electronic monitoring in the discretion of the probation officer for the first two years of supervised release as a special condition of supervision. The Court finds that this sentence is sufficient but not greater than necessary to comply with the purposes of sentencing.

**SO ORDERED.**

Dated:  October 17, 2024

                                                         *J. Philip Calabrese*

                                                        J. Philip Calabrese
                                                        United States District Judge
                                                        Northern District of Ohio